ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| **RAFAEL HERNÁNDEZ VALLE**<br><br>Recurrente<br><br>v.<br><br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN**<br><br>Recurrido | TA2025RA00193 | **REVISIÓN** procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm:<br>**ICG-360-2025**<br><br>Sobre:<br>Solicitud de Cambio de Tabla de Liquidación de Sentencia, Por Ley 85 |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

## SENTENCIA

En San Juan, Puerto Rico, a 15 de octubre de 2025.

Rafael Hernández Valle (Hernández Valle o parte recurrente), quien se encuentra confinado bajo la custodia del Departamento de Corrección y Rehabilitación (DCR o parte recurrida) en la Institución Correccional Guerrero en Aguadilla, comparece por derecho propio y en *forma pauperis[1]* y solicita la revisión de la *Resolución* emitida el 10 de julio de 2025, por la Coordinadora Regional de la División de Remedios Administrativos del DCR. Mediante la misma, la agencia confirmó y modificó la respuesta emitida por el técnico de récord penal, señor Eduardo Carire Cuevas, a una solicitud de cambio de la hoja de liquidación de sentencia al amparo de la Ley Núm. 85-2022 presentada por la parte recurrente.

Por las razones que expondremos a continuación, se confirma la determinación recurrida.

---

[1] Se declara ha lugar la *Solicitud y Declaración para que se Exima del Pago de Arancel por Razón de Indigencia* presentada Rafael Hernández Valle.

**I.**

Según surge del expediente, Hernández Valle fue sentenciado por infracciones a los Artículos 5.04 (dos (2) años) y 5.15 (un (1) año) de la derogada *Ley de Armas de Puerto Rico*, Ley Núm. 404-2000 (Ley de Armas), 25 LPRA secs. 458c y 458, así como a dos (2) años por violación del Artículo 3.1 de la *Ley para la Prevención e Intervención con la Violencia Doméstica*, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA sec. 631 (Ley Núm. 54). Este comenzó a cumplir las sentencias en 2016 y terminó de cumplirlas el 5 de febrero de 2019.

Posteriormente, en el 2019, Hernández Valle comenzó a extinguir una sentencia de 15 años por infracción al Art. 5.04 de la Ley de Armas, seguida de una pena de dos (2) días por una multa y una violación al Art. 192 del Código Penal de 2004.

El **26 de agosto de 2021** se le notificó a Hernández Valle la *Hoja de Control de Liquidación de Sentencia*, la cual detalló que cumpliría el máximo de su sentencia el **16 de noviembre de 2033**. El **25 de septiembre de 2023** se le entregó otra hoja de sentencia **que solo incluyó las penas no cumplidas**. A su vez, se le especificó que aplicaba la Ley Núm. 85-2022 y que **se daban por cumplidas las sentencias de los Arts. 5.04, 5.15 de la Ley de Armas y el Art. 3.1 de la Ley Núm. 54**. En aludida hoja, el mínimo de la sentencia aparecía cumplido, y el máximo se cumpliría el **16 de noviembre de 2033**. Por último, el **15 de agosto de 2024** se le entregó al recurrente otra hoja de sentencia, la cual incluyó ciertas instrucciones impartidas por el DCR en octubre de 2023. Tras el debido cálculo, el mínimo de la sentencia aparecía cumplido, pero el máximo de sentencia se cumpliría el **14 de mayo de 2033.**

El 14 de abril de 2025, Hernández Valle instó una *Solicitud de Remedio Administrativo* (ICG-360-2025) ante la División de Remedios Administrativos del Departamento de Corrección y

Rehabilitación, en la cual solicitó que se le aplicaran las disposiciones de la Ley Núm. 85-2022 a su hoja de liquidación de sentencia. El 16 de mayo de 2025, el DCR respondió a la referida solicitud lo siguiente:

> Se verifica expediente criminal [,] la liquidación de sentencia está realizada conforme a la Ley 85. Esta no se puede alterar.

Inconforme, Hernández Valle solicitó reconsideración y requirió una explicación razonable del porqué no se podía alterar su *Hoja de Control sobre Liquidación de Sentencias*. Particularizó que en la hoja de liquidación de 15 de agosto de 2024 se le indicó que las penas por los Arts. 5.04, 5.15 de la Ley de Armas y el Art. 3.1 de la Ley Núm. 54 serían cumplidas en el 2033, aun cuando esta se cumplió desde el 5 de febrero de 2019.

Tras varios trámites, el 10 de julio de 2025, el DCR dictó la determinación impugnada, mediante la cual confirmó y modificó la respuesta emitida por el técnico de récord penal. En su dictamen, el DCR realizó las siguientes determinaciones de hechos:

1. El 14 de abril de 2025 el recurrente radicó una solicitud de remedios en la cual plantea una situación con el personal de la oficina de record penal con la Sra. Madilyn Dumeng, para que realicen cambios en su tabla de sentencia, ya que le aplicaron la Ley 85, porque le están incluyendo una sentencia de Ley 54 art.3.1, la cual cumplió.

2. El 30 abril de 2025, el Sr. Juan Nieves Cruz, Evaluador de la División de Remedios Administrativos de la oficina local de la Inst. Guerrero, Aguadilla, recibe, enumera, codifica y firma el recibo de la solicitud de Remedio Administrativo.

3. El 8 de mayo de 2025, el Sr. Juan Nieves Cruz, Evaluador de la División de Remedios Administrativos de la Oficina local de la Inst. Guerrero, Aguadilla, le entrega recibo al MPC Rafael Hernández Valle, de que su solicitud de remedio que está en proceso de que el área concernida le contesté.

4. El 6 de mayo de 2025, el Sr. Henry Luna Bravo, Evaluador de la División de Remedios Administrativos de la Oficina local de la Inst. Guerrero, Aguadilla recibe la contestación del area concernida, para entregársela al recurrente MPC Rafael Hernández Valle. La cual- la Sra. Madilyn Dumeng le contestó al recurrente. Indicándole que se verificó el expediente za criminal, la liquidación de sentencia y está realizada conforme a la Ley 85. No se puede alterar.

5. El 26 de mayo de 2025, el recurrente inconforme con la respuesta presentó Solicitud de Reconsideración donde expresó las razones, que no está de acuerdo con la respuesta emitida por la supervisora de record penal y solicitó una explicación razonable para entender la liquidación.

6. Recibida la Solicitud de Reconsideración y acogida, por la Coordinadora Regional. Melissa Ruiz Sepúlveda, al ser acogida la solicitud de reconsideración, tendré (30) días laborables para emitir Resolución de reconsideración, Este término comenzará a transcurrir desde la fecha en que se emitió la respuesta de reconsideración al miembro de la población correccional salvo que medie justa causa.

Aun en desacuerdo, Hernández Valle acude ante nos y le señala al DCR la comisión de los siguientes errores:

[A]l confirmar la respuesta emitida por parte del señor Eduardo Carire Cuevas, técnico de record penal que, porque el DCR le impartió directrices de aplicar la Ley 85, le favorezcan o no le favorezcan al confinado, en su Hoja de Control sobre Liquidación de Sentencia, alterando los cómputos de la sentencia del recurrente haciéndole cumplir más tiempo del anterior señalado, en violación de sus derechos.

[A]l aplicar la Ley Núm. 85 siendo la misma una ley *ex postfacto* que agrava la situación y perjudica al recurrente por leyes que no estaban vigente al momento de los hechos delictivos; siempre y cuando favorezca a la persona condenada son aplicables.

[A]l volver a incluir las sentencias ya cumplidas por los Arts. 5.04, 5.15 de la Ley de Armas y 3.1 de la Ley Núm. 54, las cuales fueron cumplidas el 5 de febrero de 2019, al final de la Hoja sobre Liquidación de Sentencia del 15 de agosto de 2024 como si no las hubiese cumplido.

El Departamento de Corrección y Rehabilitación, por conducto de la Oficina del Procurador General de Puerto Rico, presentó su alegato el 19 de septiembre de 2025.

Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II.

### A.

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Vélez v. ARPE,* 167 DPR 684, 693 (2006); *Otero v.*

*Toyota*, 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida.[2]

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. Véase, además, *Super Asphalt v. AFI y otros*, 206 DPR 803, 820 (2021); *Capó Cruz v. Jta. Planificación*, 204 DPR 581 (2020); *Román Ortiz v. OGPe*, 203 DPR 947 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[3] Bajo dicho escenario, los foros apelativos deben sostenerlas. Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675. Véase también, *Daco v. Toys "R" Us*, 191 DPR 760, 764 (2014); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000). En cuanto a las conclusiones de derecho, la LPAU dispone que: "serán revisables en todos sus aspectos por el tribunal".

---

[2] Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

[3] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota*, supra, pág. 728.

Empero, debemos puntualizar que, aunque nuestro más Alto Foro ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente, dicha consideración por parte de los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025).

En consonancia con lo anterior, el Tribunal Supremo de Puerto Rico, haciendo eco a las palabras del Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo,* 603 US 369 (2024), determinó en *Vázquez v. Consejo de Titulares,* supra, que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales y enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU.

Asimismo, el Tribunal Supremo de Puerto Rico expresó en *Vázquez v. Consejo de Titulares,* supra, que:

> [A]l enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial.

Ahora bien, debido a que las resoluciones de los organismos administrativos gozan de una presunción de legalidad y corrección, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotarla. *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR 633 (2024); *García Reyes v. Cruz Auto Corp.*, supra, pág. 893; *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior, surge claramente que la carga probatoria le corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

**B.**

La Ley Núm. 85-2022, según enmendada, se promulgó para enmendar el Artículo 308 de la Ley Núm. 146-2012, según enmendada, conocida como "Código Penal de Puerto Rico", con el fin de establecer los términos para cualificar para la consideración de la Junta de Libertad Bajo Palabra y para enmendar el Artículo 3 de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, conocida como "Ley de la Junta de Libertad Bajo Palabra". Así, pretende establecer una manera justa, retributiva y rehabilitadora, que le permita a aquella persona convicta por varios delitos el poder ser considerada para libertad bajo palabra al cumplir con los términos de la sentencia más onerosa relacionada directamente con alguno de los delitos por los cuales fue encontrado culpable.

Mediante la Sección 1 de la aludida Ley se enmendó el Artículo 308 de la Ley Núm. 146-2012 para que lea como sigue:

> "Artículo 308 – Términos para cualificar para consideración de la Junta de Libertad bajo Palabra.
>
> Toda persona convicta bajo las disposiciones de este Código podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.
>
> En delitos graves cuyo término de reclusión señalada en el tipo sea de cincuenta (50) años, la persona podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir quince (15) años de su sentencia o cinco (5) años si se trata de un menor de edad procesado y sentenciado como adulto.
>
> En caso de la persona convicta de asesinato en primer grado, un delito cuya pena sea de noventa y nueve (99) años o reincidencia habitual la persona podrá ser considerada para libertad bajo palabra por la Junta de

Libertad Bajo Palabra, al cumplir veinticinco (25) años de su sentencia, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto. Las personas convictas al amparo del inciso (c) del Artículo 93 estarán excluidas del privilegio de libertad bajo palabra.

En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos. Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial."

De otro lado, la Sección 2 enmendó el Art. 3 de la Ley Núm. 118 de 22 de julio de 1974, según enmendada, conocida como "Ley de la Junta de Libertad Bajo Palabra", para que lea como sigue:

"Artículo 3. – Autoridades, deberes y poderes de la Junta:

La Junta de Libertad Bajo Palabra tendrá la siguiente autoridad, poderes y deberes:

(a)      …

…

(1)      …

…

(4)      …

Podrá así mismo decretar la libertad bajo palabra de cualquier persona recluida en cualquiera de las instituciones penales de Puerto Rico que haya sido convicta conforme a las disposiciones de la Ley 146-2012, conocida como "Código Penal de Puerto Rico de 2012" al cumplir el setenta y cinco por ciento (75%) del término de reclusión impuesto. Este cómputo nunca excederá de quince (15) años cuando se trate de un adulto o de cinco (5) años cuando se trate de un menor sentenciado y procesado como adulto en delitos para los cuales al realizarse el cómputo jurisdiccional para cualificar ante la consideración de la Junta de Libertad Bajo Palabra este sea mayor a lo requerido para delitos con pena fija señalada en el tipo de cincuenta (50) años.

En caso de la persona convicta de asesinato en primer grado bajo la Ley 146-2012, esta podrá ser considerada para libertad bajo palabra por la Junta de Libertad Bajo Palabra al cumplir veinticinco (25) años de su

sentencia, o diez (10) años, si se trata de un menor de edad procesado y sentenciado como adulto.

La Junta podrá considerar para la libertad bajo palabra a aquellas personas que hayan utilizado o intentado utilizar un arma de fuego ilegal en la comisión de un delito grave o su tentativa, según definido en la Ley 146-2012, según enmendada. La Junta podrá conceder el beneficio cuando se ha determinado reincidencia habitual por delitos no violentos al cumplir veinticinco (25) años de su sentencia de reclusión, pero no podrá conceder el beneficio cuando la persona haya resultado convicta por delitos de agresión sexual o pornografía infantil en cualquiera de sus modalidades, según definidos en la Ley 146-2012, según enmendada. Antes de conceder el beneficio, la Junta considerará todas las disposiciones contenidas en el Artículo 3-B de esta Ley y lo que contemplan en la Ley 22-1988, mejor conocida como la Ley de la "Carta de Derechos de Víctimas y Testigos de Delito", según enmendada, para garantizarle a las víctimas todos los derechos.

...

(5) En aquellos procesos judiciales en que se encuentre al acusado culpable por más de un delito y se le imponga una sentencia a ser cumplida de manera consecutiva, la persona convicta tendrá derecho a cualificar para libertad bajo palabra al cumplir con el término concerniente a la pena mayor recibida por alguno de los delitos cometidos. Cuando más de uno de los delitos cometidos conlleve la misma pena, la persona convicta cualificará para el beneficio de libertad bajo palabra con el mero hecho de haber cumplido con el término de una de ellas. Lo dispuesto en este párrafo será de aplicabilidad, independientemente si la Ley en virtud de la cual resulta convicto, sea una Ley Penal Especial.

...

(b) ...

...".

**La Ley Núm. 85-2022 destacó que aplicaría de manera retroactiva, independientemente del Código Penal o Ley Penal Especial vigente al momento de los hechos delictivos, siempre y cuando resulte favorable para la persona condenada.** Además, que las cláusulas de prohibiciones absolutas de libertad bajo palabra en los delitos de leyes penales especiales no serían aplicables al caso de menores juzgados y sentenciados como adultos cuando contravengan lo aquí establecido. También estableció que

las disposiciones de esta Ley prevalecerían sobre cualquier otra disposición de ley que no estuviere en armonía con lo aquí establecido. Secciones 3 y 4. (Énfasis nuestro).

**III.**

Por estar estrechamente relacionados, discutiremos todos los señalamientos de error en conjunto. En esencia, la parte recurrente hace constar su inconformidad con la determinación del Departamento de Corrección y Rehabilitación en aplicarle la Ley Núm. 85-2022 a los términos de su sentencia. Esgrime que dicha ley es *ex post facto* que atenta contra el ordenamiento jurídico vigente. Es su parecer que con la decisión del DCR se le colocó a extinguir nuevamente las penas impuestas en los Arts. 5.04 y 5.15 de la Ley de Armas y en el Art. 3.1 de la Ley Núm. 54, extinguidas en el 2019. Sostiene que la Ley Núm. 85-2022 no se debe aplicar a su caso porque no le resulta favorable.

Por otro lado, la parte recurrida argumenta que las alegaciones de la parte recurrente son erróneas. Aclara que el DCR aplicó correctamente las disposiciones de la Ley Núm. 85-2022 al caso de autos. Destaca que la hoja de sentencia de 2024 invirtió las sentencias siguiendo las directrices de la agencia.[4] En ese ejercicio, se calculó nuevamente la sentencia mayor de cinco (5) años, y a base de esta, se obtuvo el mínimo para computar el término para ser elegible a la JLBP. No obstante, hace constar que la hoja de sentencia más reciente tuvo el efecto de acortar el término máximo de reclusión de la parte recurrente **sin afectar el mínimo ni su elegibilidad para beneficios o privilegios**.

Analizado el expediente, concluimos que los argumentos de la parte recurrente no se sostienen. Somos del criterio que no incidió

---

[4] Directrices impartidas el 11 de octubre de 2023 por el DCR bajo la *Carta Circular Núm. 2023-02* sobre el procedimiento a seguir para el cumplimiento de la Ley Núm. 85-2022.

la agencia recurrida al emitir su dictamen. De la *Hoja de Control de Liquidación de Sentencia* de la parte recurrente del 23 de septiembre de 2023, se desprende que la sentencia de 15 años comenzó a extinguirse en el 2019, luego del cumplimiento de las otras penas. Por igual, de la *Hoja de Control de Liquidación de Sentencia* de 2024 resulta evidente que la condena máxima de la parte recurrente se acortó, toda vez que cumpliría el máximo aproximadamente seis (6) meses antes del 16 de noviembre de 2033. Por tanto, la parte recurrente, lejos de resultar perjudicado por la aplicación de las disposiciones de la Ley Núm. 85-2022, ello le benefició.

En virtud de lo antes expuesto, concluimos que la parte recurrente no logró derrotar la presunción de corrección que ostentan las decisiones administrativas, ni tampoco nos persuadió a alejarnos de la norma de deferencia que generalmente estas merecen. La decisión de la agencia fue razonable y se dictó bajo el marco doctrinal adecuado. En consecuencia, confirmamos la *Resolución* impugnada.

**IV.**

Por los fundamentos antes expuestos, se confirma el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones